Richard W. Mark
David M. Fine
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, NY 10103
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- X

SEAT SACK, INC.,                          :

        Plaintiff,              :

  -against-                              :

CHILDCRAFT EDUCATION CORP.;                   CASE NO. 07-CIV-3344 (RJH)(DFE)
US OFFICE PRODUCTS COMPANY;               :
US OFFICE PRODUCTS NORTH
ATLANTIC DISTRICT, INC.; and              :
SCHOOL SPECIALTY, INC.,
                                          :
        Defendants.             :

---------------------------------------- X


# CHILDCRAFT DEFENDANTS' OPPOSITION TO
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION


OF COUNSEL:

Nicholas A. Kees
Anthony S. Baish
Mark E. Schmidt
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, WI 53202-3590

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND FACTS..........................................................................................2

STANDARDS ON MOTION FOR PRELIMINARY INJUNCTION.......................5

ARGUMENT............................................................................................................5

    I.      PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS .................5

           A.     Several of Plaintiff's Claims Are Legally Deficient ..................6

           B.     No Breach of Contract Occurred ..............................................6

           C.     There is No Basis to Conclude that Plaintiff's
Design Patent has been Infringed ............................................7

           D.     Plaintiff Fails to Show a Reasonable Likelihood of
Success on the Merits of Its Lanham Act Claims......................9

                  1.     Plaintiff Has No Federally-Registered Trademark, and
Therefore Cannot Prevail Under 15 U.S.C. § 1114......................9

                  2.     Plaintiff Also Cannot Prevail Under 15 U.S.C. § 1125(a) ..........10

                        a. Trademark and Trade Dress Infringement............................11

                        b. False Designation of Origin.....................................................13

            E.     Plaintiff Fails to Show a Reasonable Likelihood of Success
on the Merits of Its Claims Under Section 360-l of the
New York General Business Laws...........................................14

           F.     Plaintiff Is Not Likely to Succeed In Any Claim
Against School Specialty, Inc....................................................15

    II.     PLAINTIFF FAILS TO DEMONSTRATE THE LIKELIHOOD OF
IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF ............................15

           A.     Plaintiff's Delay in Seeking Injunctive Relief
Forecloses Any Claim of Irreparable Harm .............................15

           B.     Delay Aside, Plaintiff Cannot Show
Irreparable Harm In Any Event ...............................................17

                  1.     Plaintiff's Alleged Harm Is Compensable Through Money
Damages, and Therefore Is Not Irreparable .................................18

                  2.     Irreparable Harm May Not Be Presumed .....................................19

    III.    IF THE PRELIMINARY INJUNCTION IS GRANTED, PLAINTIFF
MUST BE ORDERED TO POST A BOND.........................................................20

CONCLUSION .......................................................................................................20

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,
    853 F.2d 1557 (Fed. Cir. 1988) ............................................................................8

Beech-Nut, Inc. v. Warner-Lambert Co.,
    480 F.2d 801 (2d Cir. 1973) ..............................................................................18

Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,
    489 U.S. 141 (1989) ...........................................................................................8

Borey v. National Union Fire Ins. Co.,
    934 F.2d 30 (2d Cir. 1995) ...........................................................................17, 18

Bose Corp. v. Linear Design Labs, Inc.,
    467 F.2d 304 (2d Cir. 1972) ................................................................................8

Brennan's, Inc. v. Brennan's Restaurant, L.L.C.,
    360 F.3d 125 (2d Cir. 2004.) .......................................................................11, 12

Brockmeyer v. The Hearst Corp.,
    No. 01 Civ. 7746 (JGK), 2002 WL 1402320 (S.D.N.Y. June 27, 2002) ...............16

Cedar Swamp Holdings, Inc. v. Zaman,
    476 F. Supp. 2d 303 (S.D.N.Y. 2007) ................................................................17

Citibank, N.A. v. Citytrust,
    756 F.2d 273 (2d Cir. 1985) ..............................................................................16

Duggal v. Krishna,
    554 F. Supp. 1043 (D.D.C. 1983).........................................................................9

Ebay Inc. v. Mercexchange,
    ___ U.S. ___, 126 S. Ct. 1837 (2006) ..................................................................5

Forschner Group, Inc. v. Arrow Trading Co., Inc.,
    124 F.3d 402 (2d Cir. 1997) ..............................................................................10

Genesee Brewing Co. v. Stroh Brewing, Co.,
    124 F.3d 137 (2d Cir. 1997) .........................................................................10, 19

Globalaw Ltd. v. Carmon & Carmon Law Office,
    452 F. Supp. 2d 1 (D.D.C. 2006)..........................................................................9

Ivy Mar Co. v. C.R. Seasons, Ltd.,
   907 F. Supp. 547 (E.D.N.Y. 1995) ........................................................................ 16

J.G. Stickley v. Canal Dover Furn. Co., Inc.,
   79 F.3d 258 (2d Cir. 1996) ....................................................................... 11, 12, 20

Jack Guttman, Inc. v. Kopykake Enter., Inc.,
   302 F.3d 1352 (Fed. Cir. 2002) ........................................................................... 19

Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co.,
   604 F.2d 755 (2d Cir. 1979) ............................................................................... 19

Lee v. Dayton-Hudson Corp.,
   838 F.2d 1186 (Fed. Cir. 1988) ............................................................................. 9

Loveridge v. Pendleton Woolen Mills, Inc.,
   788 F.2d 914 (2d Cir. 1986) ............................................................................... 18

Magnet Communs. LLC v. Magnet Communs., Inc.,
   No. 00 Civ. 5746, 2001 WL 1097865 (S.D.N.Y. Sept. 19, 2001) .......................... 16

Mazurek v. Armstrong,
   520 U.S. 968 (1997) ............................................................................................ 5

New York City Envir. Justice Alliance v. Giuliani,
   214 F.3d 65 (2d Cir. 2000) ................................................................................. 18

OddzOn Prods., Inc. v. Just Toys, Inc.,
   122 F.3d 1396 (Fed. Cir. 1997) ............................................................................. 8

Polaroid Corp. v. Polarad Elecs. Corp.,
   287 F.2d 492 (2d Cir. 1961) ............................................................................... 12

Sally Gee, Inc. v. Myra Hogan, Inc.,
   699 F.2d 621 (2d Cir. 1983) ............................................................................... 14

Scholastic, Inc. v. Stouffer,
   221 F. Supp. 2d 425 (S.D.N.Y. 2002) ................................................................. 14

Sussman v. Crawford,
   488 F.3d 136 (2d Cir. 2007) ................................................................................. 5

The Comic Strip v. Fox Television Stations, Inc.,
   710 F. Supp. 976 (S.D.N.Y. 1989) ..................................................................... 16

Tom Doherty Assoc., Inc. v. Saban Entertainment, Inc.,

60 F.3d 27 (2d Cir. 1995) ...................................................................................18

Tough Traveler, Ltd. v. Outbound Prods.,
    60 F.3d 964 (2d Cir. 1995) .................................................................5, 16, 17, 19

Two Pesos, Inc. v. Taco Cabana, Inc.,
    505 U.S. 763 (1992) ........................................................................................11

Wal-Mart Stores, Inc. v. Samara Bros., Inc.,
    529 U.S. 205, 146 L. Ed. 2d 182 (2000)..............................................................9

Weissmann v. Freeman,
    868 F.2d 1313 (2d Cir. 1989) ............................................................................19

Worldwide Sport Nutritional Supplements, Inc. v. Five Star Brands, LLC,
    80 F. Supp. 2d 25 (N.D.N.Y. 1999).....................................................................16

## STATE CASES

Allied Maint. v. Allied Mech. Trades,
    42 N.Y.2d 538, 369 N.E.2d 1162 (1977) ............................................................14

## FEDERAL STATUTES

15 U.S.C. § 1052 .....................................................................................................9

15 U.S.C. § 1114 .....................................................................................................9

15 U.S.C. § 1125 ...........................................................................................9, 10, 13

Fed. R. Civ. P. 65(c) ..............................................................................................20

## STATE STATUTES

N.Y. G.B.L § 360-l...........................................................................................4, 14, 15

## MISCELLANEOUS

2 McCarthy on Trademarks § 15.30 (West 2007) .....................................................11

Restatement (Third) of Unfair Competition § 16 cmt. a (1995)................................12

Richard W. Mark (RM 6884)
David M. Fine (DF 4479)
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, NY 10103
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

SEAT SACK, INC.,                              :

        Plaintiff,                  :

  -against-                              :

CHILDCRAFT EDUCATION CORP.;       :    CASE NO. 07-CIV-3344 (RJH)(DFE)
US OFFICE PRODUCTS COMPANY;
US OFFICE PRODUCTS NORTH          :
ATLANTIC DISTRICT, INC.; and
SCHOOL SPECIALTY, INC.,            :

       Defendants.                :

------------------------------------- X

## CHILDCRAFT DEFENDANTS' OPPOSITION TO
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

In order to obtain a preliminary injunction, plaintiff Seat Sack, Inc. ("Plaintiff") bears the

burden of establishing a likelihood of success on the merits and of irreparable harm. Yet its

motion and supporting papers are notably lacking a key ingredient: evidence. Stripped of

incendiary hyperbole – "fraud," "fiduciary duties," "knock-off products," bootleg products,"

etc. – Plaintiff's claims rest on nothing more than unsupported and self-serving proclamations

that fall far short of establishing its entitlement to the extraordinary remedy of a preliminary

injunction.

The reality of the case is this: defendant Childcraft Education Corp. ("Childcraft") occasionally bought Plaintiff's Seat Sack product for resale, nothing more. Once Childcraft paid for the products – and it always did – its obligations to Plaintiff came to an end. Now that Childcraft has stopped buying the Seat Sack, Plaintiff is unhappy. Plaintiff is even more annoyed that Childcraft has introduced a competitive product, as it is fully entitled to do. And so Plaintiff has sued Childcraft, and, for good measure, Childcraft's parent, defendant School Specialty, Inc. ("School Specialty"; collectively with Childcraft, the "Childcraft Defendants").

Plaintiff may not eliminate Childcraft as a competitor just because it does not like the competition, and this Court should not assist it in its attempt to do so. Plaintiff cannot prevail on its claims, and cannot show irreparable harm. Its motion should be denied.

## BACKGROUND FACTS

On January 28, 2000, Plaintiff executed an agreement with Childcraft entitled "Childcraft Education Corp. Exclusives – Growing Years Catalog" (the "Agreement"). (Murphy Decl. para. 3, Ex. A.) By its express terms, the Agreement gives Childcraft the exclusive right to sell Plaintiff's product with a Childcraft label affixed to the product. (Id. para. 4, Ex. A.) Over the course of several years under this arrangement, Childcraft purchased thousands of Seat Sacks from Plaintiff. (Id. para. 5.) The purchased Seat Sacks became part of Childcraft's inventory and were later sold, bearing the Childcraft label, through Childcraft's website and catalog. (Id. para. 6.) Childcraft paid Plaintiff all amounts due whenever it purchased Seat Sacks. (Id. para. 7.) Other than the purchase price paid by Childcraft, Plaintiff was not entitled to receive any additional money – such as a royalty – from Childcraft's resale of the Seat Sack. (Id. para. 8.) The Agreement did not require Childcraft to purchase or sell any minimum number of Seat Sacks, and did not restrict Childcraft's right to offer competing products. (Id. para. 9, Ex.

A.) Other than the Agreement and periodic purchases of Seat Sacks, Childcraft did not enter into any other agreements with Plaintiff. (Id. para. 10.)

Childcraft and Plaintiff operated under this arrangement for several years. (Id. para. 11.) In approximately 2003, however, Childcraft discovered that Plaintiff was offering to sell the Seat Sack to Childcraft's competitors at a price lower than the price at which it sold to Childcraft. (Id. para. 11.) Childcraft also learned that Plaintiff was offering the Seat Sack for sale directly to teachers, who are a primary market for Childcraft's products, at a price lower than offered in the Childcraft catalog. (Id. para. 12.) Because it did not want to further subsidize a competitor, Childcraft elected to end its relationship with Plaintiff. (Id. para. 13.) In July 2003, Childcraft independently began developing its own Seat Pocket product. (Id. para. 14.) The Seat Pocket is different from Plaintiff's Seat Sack in terms of its pocket configuration (it contains two additional storage pockets), appearance, and color. (Id. para. 15, Ex. B.) Childcraft began offering the Seat Pocket for sale through its catalog in January, 2004. (Id. para. 16.) Childcraft continued to offer both products for sale in its catalog through 2005. (Id.) Seat Sack apparently did not complain about the development and sale of the Seat Pocket prior to the filing of this lawsuit. (Id. para. 17.) Childcraft's last purchase of Childcraft-branded Seat Sacks occurred on or about September, 2005. (Id. para. 18.)

Until recently, if a visitor to Childcraft's website entered the search term "Seat Sack," the website would produce information about both the Seat Sack (some of which remained in Childcraft's inventory) and the Seat Pocket. (Murphy Decl. para. 19; Klinger Decl. para. 3.) Virginia Murphy, Childcraft's Vice President of Early Childhood Merchandising and Product Development, first learned of this situation during the course of this lawsuit and investigated the matter through Childcraft's website technology personnel. (Murphy Decl. paras. 1, 19-20.) The

3

results of searches conducted on Childcraft's website are determined by automated protocols set forth in the website's software. (Klinger Decl. para. 4.) As with all other searches on Childcraft's website, the results of a search under the term "Seat Sack" were produced in accordance with these automated protocols. (Id.) Childcraft did not change or manipulate the search protocols of its website to influence the results of searches containing the terms "seat," "Seat Sack," or "Seat Pocket." (Id. para. 5.) Although Childcraft is entitled to sell the Seat Pocket and its remaining inventory of Seat Sacks without restriction, out of an abundance of caution in light of Plaintiff's Complaint, Murphy instructed Childcraft's website technology personnel to reconfigure Childcraft's website so that a search for "Seat Sack" does not yield results that include information about the Seat Pocket. (Id. para. 6; Murphy Decl. para. 21.)

According to the Affidavit of Ann McAlear, Plaintiff's president, a computer search of the term "seat sack," allegedly conducted by a New York School District teacher on what purports to be a "NYC Department of Education" website, resulted in information about what appears to be a Childcraft product named "Seat Sack." (McAlear Aff. paras. 14-15, Ex. E.) Childcraft does not operate, administer, or control the content or search protocols of the "NYC Department of Education" website or the websites of any other school district or education department. (Murphy Decl. para. 22.)

Plaintiff sues Childcraft and its parent, School Specialty, for fraud in the inducement, fraud, conversion, breach of contract, "unfair competition," "attorneys' fees," patent infringement, several species of violations of both the Lanham Act and New York General Business Law section 360-l, and unjust enrichment. (See Compl.) In response to a motion to dismiss many of these claims, Plaintiff asserted the present cross-motion for a preliminary injunction. Plaintiff seeks to enjoin Childcraft and School Specialty from advertising or selling

the Seat Pocket, from otherwise competing with Plaintiff, from "artificially inflating" the price of

the Seat Sack, and from operating its website. (Pl. Notice of Cross-Motion at 2.)

Because it cannot meet any of the prerequisites to a preliminary injunction, Plaintiff's

motion should be denied.

### STANDARDS ON MOTION FOR PRELIMINARY INJUNCTION

The decision whether to grant or deny injunctive relief rests within the equitable

discretion of the district court. See Ebay Inc. v. Mercexchange, ___ U.S. ___, 126 S. Ct. 1837,

1839 (2006). In order to obtain a preliminary injunction, the moving party must show (1) the

likelihood of irreparable injury, and (2) either: (a) likelihood of success on the merits, or (b)

sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in

movant's favor. See Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 967 (2d Cir. 1995).

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be

granted unless the movant, by a clear showing, carries the burden of persuasion." Sussman v.

Crawford, 488 F.3d 136, 139-40 (2d Cir. 2007) (citing Mazurek v. Armstrong, 520 U.S. 968, 972

(1997) (emphasis in original)). Here, Plaintiff fails to its burden with respect to any of the

requisite elements.

### ARGUMENT

## I.    PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS

Plaintiff does not – indeed, cannot – meet its burden of showing a likelihood of success

on the merits of any of its claims. Many of Plaintiff's claims suffer from fatal legal deficiencies,

as addressed in Childcraft Defendants' motion to dismiss portions of the Complaint. Plaintiff's

breach of contract claim is premised on contractual duties that plainly do not exist between the

parties. Plaintiff simply assumes Childcraft's infringement of its design patent without argument

or analysis, when in fact the design of Childcraft's Seat Pocket is substantially different from that of the Seat Sack. Plaintiff's various trademark claims under both the Lanham Act and New York law fail, because Plaintiff has not demonstrated ownership of a protectible mark or a likelihood of consumer confusion. And Plaintiff does not even attempt to demonstrate why School Specialty, Childcraft's parent, should even be a party to this lawsuit.

In short, nothing that Plaintiff has submitted to the Court supports any inference of a likelihood of success on the merits.

### A.    Several of Plaintiff's Claims Are Legally Deficient

Childcraft Defendants have moved to dismiss Plaintiff's claims for fraud, conversion, "deceptive trade practices," "attorney's fees," and unjust enrichment. Because these claims are legally deficient, as set forth in Childcraft Defendants' memorandum of law in support of their motion to dismiss (arguments we will not repeat here), Plaintiff cannot demonstrate a reasonable likelihood of success on the merits with respect to those claims. Accordingly, injunctive relief should not be granted on the basis of those causes of action.

### B.    No Breach of Contract Occurred

Plaintiff repeatedly claims that Childcraft owed multiple contractual duties to Plaintiff, including "fiduciary" duties, a duty to use its best efforts in promoting plaintiff's product, and various duties related to protecting Plaintiff's alleged intellectual property rights. (See, e.g., McAlear Aff. paras. 9, 14.) Aside from bare allegations, however, Plaintiff has not identified any specific contract that places such obligations on Childcraft. The reality of Childcraft's relationship with Plaintiff is far removed from Plaintiff's unsupported assertions.

Aside from Childcraft's periodic purchases of Seat Sacks for resale, the parties executed only one agreement. On its face, the Agreement places no obligations on Childcraft at all. See

Murphy Decl. para. 3, Ex. A.)  The contract merely says that Childcraft has the exclusive right to Seat Sacks bearing the Childcraft label.  The contract does not require Childcraft to purchase any products from Plaintiff or to distribute any products on Plaintiff's behalf.  The contract does not prohibit Childcraft from selling products in competition with Plaintiff, including Childcraft's own products.  Plaintiff also is free to compete with Childcraft by supplying its products to anyone else it desires, so long as the products do not bear Childcraft's label.  And the Agreement says nothing that would give rise to undefined "fiduciary duties" owed to Plaintiff.

Under the Agreement, Childcraft occasionally purchased from Plaintiff Seat Sacks bearing the Childcraft label.  Childcraft purchased the products outright, and thereby became the owner of them.  Childcraft could, and did, resell the Seat Sacks at a profit, but Plaintiff was not entitled to any portion of that profit.  Had Childcraft chosen not to sell the Seat Sacks – but rather to let them sit in a warehouse, or to put them on the backs of chairs in Childcraft's own offices, or to give them away to charity, or to use them as fuel for the company bonfire, etc. – it would be of no consequence to Plaintiff.  <u>Once Childcraft bought the Seat Sacks, Plaintiff received the full benefit of its bargain.</u>

Plaintiff does not claim Childcraft did not pay it for the Seat Sacks it purchased, nor can it.  That being the case, Childcraft has breached no contract with Plaintiff.  Plaintiff has no reasonable likelihood of success on its contract claim.

**C.     There is No Basis to Conclude that Plaintiff's Design Patent has been Infringed**

Plaintiff has moved for injunctive relief based on infringement of its design patent without providing any explanation of how Childcraft's Seat Pocket infringes on the Seat Sack or any depiction of the allegedly infringing product.  In failing to do so, Plaintiff provides the Court with no basis to conclude that it will prevail on the merits.

Plaintiff (or, more accurately, its president) owns a design patent on the Seat Sack. (McAlear Aff. paras. 1, 4, Ex. B.) Infringement of that patent must be shown clearly and convincingly before a preliminary injunction against Childcraft may be granted. See Bose Corp. v. Linear Design Labs, Inc., 467 F.2d 304, 307 (2d Cir. 1972). Unlike a utility patent, Plaintiff's design patent only protects the novel, ornamental features of the patented design. See OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396 (Fed. Cir. 1997). To prove infringement of a design patent, Plaintiff must establish two elements: (1) that in the eye of an ordinary observer giving such attention as a purchaser usually gives, the two designs are substantially the same and the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other; and (2) that the accused infringing design appropriates the point of novelty in the patented design that distinguishes the design from the prior art. See Avia Group Int'l, Inc. v. L.A. Gear California, Inc., 853 F.2d 1557, 1565 (Fed. Cir. 1988).

Here, Plaintiff has made no effort to identify the "point of novelty" or ornamental aspects of the Seat Sack that are allegedly infringed by the Seat Pocket. Rather, Plaintiff merely proclaims that Childcraft is "selling this 'knock off' product which is identical to Plaintiff's 'Seat Sack' in name, form and function." (McAlear Aff. para. 10.)

A simple comparison of Plaintiff's Seat Sack with Childcraft's Seat Pocket reveals that the two products bear vastly different ornamentation. (Murphy Decl. para. 15, Ex. B.) Indeed, as the product descriptions from Childcraft's catalog make clear, the allegedly infringing product has different ornamental aspects including two pockets, a different color scheme, and a different name. (Id.) The products' only physical similarities relate to their function – their purpose is to drape the back of a chair and hold supplies – not their ornamentation. Accordingly, the Seat Pocket does not infringe Plaintiff's design patent. See Bonito Boats, Inc. v. Thunder Craft Boats,

Inc., 489 U.S. 141, 148 (1989) (design or shape that is entirely functional, without ornamental or decorative aspect, does not meet the criteria of a design patent); see also Lee v. Dayton-Hudson Corp., 838 F.2d 1186 (Fed. Cir. 1988) (noting a device that copies utilitarian or functional features of a patented design is not an infringement unless the ornamental aspects are also copied).

Plaintiff provides this Court with no evidence, argument, or authority upon which to conclude that Plaintiff has a reasonable likelihood of proving that Childcraft has infringed the design patent.

### D.    Plaintiff Fails to Show a Reasonable Likelihood of Success on the Merits of Its Lanham Act Claims

Plaintiff advances three claims under the Lanham Act, the first under 15 U.S.C. § 1114, which prohibits imitation of a registered mark, and the latter two under 15 U.S.C. § 1125(a), which prohibits a wide variety of conduct from common-law trademark infringement to false advertising.  (Compl. paras. 52, 60, 68.)  Plaintiff cannot prevail under either statute.

#### 1.    Plaintiff Has No Federally-Registered Trademark, and Therefore Cannot Prevail Under 15 U.S.C. § 1114

Section 32 of the Lanham Act, 15 U.S.C. § 1114, protects a "registered mark" against infringement.  Registration of the mark is a prerequisite to an action under Section 32.  See Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 209, 146 L. Ed. 2d 182 (2000) ("Registration of a mark under § 2 of the Lanham Act, 15 U.S.C. § 1052, enables the owner to sue an infringer under § 32"); Globalaw Ltd. v. Carmon & Carmon Law Office, 452 F. Supp. 2d 1, 25 (D.D.C. 2006) (same); Duggal v. Krishna, 554 F. Supp. 1043, 1044 n.4 (D.D.C. 1983) (same).  Protection of unregistered marks is left to Section 43(a) of the Lanham Act, 15 U.S.C.

§ 1125(a).  See, e.g., Forschner Group, Inc. v. Arrow Trading Co., Inc., 124 F.3d 402, 407 (2d

Cir. 1997); Genesee Brewing Co. v. Stroh Brewing, Co., 124 F.3d 137, 142 (2d Cir. 1997).

Plaintiff does not have a registered trademark in connection with the Seat Sack.  (Schmidt

Decl. para. 2, Ex. A.)  Plaintiff therefore cannot prevail on a claim under Section 32.

       2.     *Plaintiff Also Cannot Prevail Under 15 U.S.C. § 1125(a)*

Section 43(a)(1) of the Lanham Act prohibits the "use in commerce [of] any word, term,

name, symbol, or device, or any combination thereof, or any false designation of origin" which is

"likely to cause confusion . . . as to the affiliation, connection, or association" of the user with

another person, "or as to the origin, sponsorship, or approval of his or her goods, services, or

commercial activities by another person[.]"  15 U.S.C. § 1125(a)(1).  Section 43(a)(2) of the

Lanham Act similarly prohibits the misrepresentation of the "characteristics, qualities, or

geographic origin" of the user's goods.  15 U.S.C. § 1125(a)(2).  Together, these provisions

encompass a wide range of activities that include common law trademark infringement (i.e.,

infringement of unregistered marks), trade dress infringement, "passing off" one's own product

as that of another, false advertising, disparagement of a competitor's product, and so on.

Which of these theories Plaintiff intends to pursue is somewhat in doubt.  The Plaintiff's

Ninth Cause of Action seems to allege common law trademark infringement under Section

43(a)(1) through use of a mark confusingly similar to Plaintiff's mark.  (Compl. para. 61-62.)

However, Plaintiff also repeatedly proclaims that Childcraft has distributed a "knock off"

product, the Seat Pocket.  (See, e.g., Compl. paras. 10-11.)  Although it is not entirely clear just

what Plaintiff means by the term "knock off," it presumably asserts a claim for trade dress

infringement.  The Tenth Cause of Action apparently accuses Childcraft of violating 43(a)(2) by

using a false designation of the "source of the origin of the bootleg merchandise."  (Compl.

para. 70.)  Whatever the theory, Plaintiff cannot establish a likelihood of success on the merits of

any of these claims.

<em>a.    Trademark and Trade Dress Infringement</em>

To prevail on a common-law claim for infringement of Plaintiff's mark, Plaintiff "must

show, first, that its mark merits protection[.]"  <u>Brennan's, Inc. v. Brennan's Restaurant, L.L.C.</u>,

360 F.3d 125, 129 (2d Cir. 2004.)  To do so, Plaintiff must demonstrate either that the mark is

inherently distinctive or that it has acquired secondary meaning such that the public associates

the mark with the Plaintiff's product.  See <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763,

767 (1992).

Plaintiff concedes its mark is not inherently distinctive, instead alleging the mark has

acquired secondary meaning.  (Compl. paras. 61, 69.)  To establish secondary meaning, a

plaintiff typically must offer direct evidence of the public's association of the mark with the Seat

Sack, as through a consumer survey, or must present circumstantial evidence of secondary

meaning, such as evidence of the plaintiff's marketing efforts, size, sales volumes, etc.  (<u>See</u>

<u>generally</u> 2 MCCARTHY ON TRADEMARKS § 15.30, at 15-46 to 15-49 (West 2007)).  Plaintiff opts

for neither avenue, offering literally no evidence of secondary meaning.  <u>Indeed, Plaintiff does</u>

<u>not even specifically identify the "mark" it claims was infringed.</u>

Plaintiff's evidence of trade dress infringement (if that really is what Plaintiff is claiming)

is similarly deficient.  To prevail on a trade dress infringement claim under the Lanham Act,

Plaintiff must first show that the trade dress is inherently distinctive or has become distinctive

because it has acquired secondary meaning.  <u>See J.G. Stickley v. Canal Dover Furn. Co., Inc.</u>, 79

F.3d 258, 262 (2d Cir. 1996).  Again, Plaintiff makes no attempt to satisfy the first requirement

by explaining what elements of the Seat Sack "trade dress" are at issue, or how they are

11

distinctive either inherently or through the acquisition of secondary meaning. Absent such evidence, and notwithstanding Plaintiff's self-serving proclamations about "counterfeit" and "knock-off" products, its trade dress claim cannot succeed. See id. at 262 ("[t]he imitation or even complete duplication of another's product or packaging will not create a risk of confusion unless some aspect of the duplicated appearance is identified with a particular source") (citing RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 16 cmt. a (1995)).

Setting aside Plaintiff's failure to demonstrate ownership of a protectible trademark or trade dress, Plaintiff's claims fail for another reason. For both trademark and trade dress infringement claims, Plaintiff must prove a likelihood of consumer confusion. See Brennan's, Inc., 360 F.3d at 129; J.G. Stickley, 79 F.3d at 262. Likelihood of confusion usually is determined according to the eight-factor Polaroid test. See Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961).[1] Plaintiff has not bothered to address these factors, or any others for that matter. Instead, Plaintiff's evidence of alleged consumer confusion is limited to the unremarkable assertion that visitors to Childcraft's website who search for the "Seat Sack" retrieve information related to the "Seat Pocket." (McAlear Aff. para. 12.)

There is nothing nefarious here. Searches on Childcraft's website are conducted according to automated software protocols, and Childcraft is free to sell – or not sell – the Seat Sack as it sees fit. But Plaintiff's evidence fails for a more basic reason: it is not sufficient evidence of confusion with respect to Plaintiff's mark. Plaintiff has offered no evidence showing the number of visitors to the website that actually searched for "Seat Sack," who those visitors were, how knowledgeable were they about the parties' respective products, or whether any of

---

[1] The non-exclusive factors are: (1) the strength of the marks, (2) the degree of similarity between the two marks, (3) the competitive proximity of the products, (4) actual confusion, (5) the likelihood the plaintiff will bridge the gap, (6) the defendant's good faith in adopting the mark, (7) the quality of the defendant's products, and (8) the sophistication of purchasers. See Polaroid, 287 F.2d at 495.

them (assuming there were any other than Plaintiff) were actually confused. Plaintiff has avoided these and other highly relevant questions, and instead would simply have this Court assume consumer confusion. But just because a visitor to Childcraft's website might have seen information about both the Seat Sack and the Seat Pocket in response to such a search says nothing about whether the visitor was confused, or about whether any potential visitor was likely to be confused, as to the source of the two products.

Plaintiff fails to offer any evidence of a protectible interest in a mark or in trade dress, and similarly fails to demonstrate a likelihood of consumer confusion. Accordingly, Plaintiff has not shown a probability of success on the merits.

> b.    *False Designation of Origin*

As discussed above, Section 43(a)(2) of the Lanham Act prohibits the misrepresentation of the "characteristics, qualities, or geographic origin" of one's goods or services in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(2). Childcraft, according to Plaintiff, violated this provision when it "misrepresented and falsely described to the general public the source of origin of the bootleg merchandise," i.e., the Seat Pocket. (Compl. para. 70.)

As evidence of Childcraft's so-called misrepresentation of the origin of the Seat Pocket, Plaintiff cites a single alleged incident in which one unidentified teacher searched the New York City Department of Education website for "seat sack" and retrieved results about "seat sack cc edu corp," apparently a reference to a Childcraft product. (McAlear Aff. para. 14, Ex. E.) From this, Plaintiff leaps to the assertion that Childcraft is "misrepresenting that their 'knock off' product known as 'Seat Pocket' is the same as Plaintiff's 'Seat Sack'." (Id. para. 14.) Even if one accepts McAlear's hearsay evidence (not even attributed to an identifiable source) as true, it is not a basis for finding that Childcraft did anything wrong. Plaintiff's presentation provides no

basis to infer, for example, that the "seat sack" referenced in the computer search is in fact a Seat Pocket, as opposed to a Seat Sack, which Childcraft sold with Plaintiff's blessing. Indeed, since the search apparently was conducted in March 2006 (McAlear Aff. para. 15), when Childcraft still had Seat Sacks in its inventory (Murphy Decl. para. 19), one would <u>expect</u> a search for "Seat Sack" to reflect Childcraft's product.

In any event, whether the computer search references a Seat Sack or a Seat Pocket is irrelevant, because Childcraft bears no responsibility for the results of a computer search done on a website it does not control or administer. If Plaintiff is concerned about the New York City Department of Education's website, it should address the matter with the Department.

Plaintiff fails to present evidence that Childcraft falsely represented the origin of the Seat Pocket to the public.

### E.    Plaintiff Fails to Show a Reasonable Likelihood of Success on the Merits of Its Claims Under Section 360-l of the New York General Business Laws

Plaintiff asserts two purported claims under N.Y. G.B.L § 360-l. The first (its Eleventh Cause of Action) is premised on the notion that Childcraft's activities will dilute the distinctive quality of its mark or trade name. A prerequisite to a claim under this statute, however, is "ownership of an 'extremely strong mark' that is either 'distinctive' or has acquired secondary meaning." <u>Scholastic, Inc. v. Stouffer</u>, 221 F. Supp. 2d 425, 437 (S.D.N.Y. 2002) (<u>quoting</u> <u>Sally Gee, Inc. v. Myra Hogan, Inc.</u>, 699 F.2d 621, 625 (2d Cir. 1983); <u>Allied Maint. v. Allied Mech. Trades</u>, 42 N.Y.2d 538, 542-46, 369 N.E.2d 1162 (1977). For all the reasons discussed above, Plaintiff has failed to present any evidence of a mark – "extremely strong" or otherwise – that has acquired secondary meaning. Plaintiff has no likelihood of success on this claim.

Plaintiff's second claim under N.Y. G.B.L § 360-l alleges the improper diversion of sales from Plaintiff to Childcraft. (Compl. para. 78.) The statute, however, addresses only the dilution of a trademark, not the diversion of sales. Plaintiff cannot prevail on this claim, either.

### F.    Plaintiff Is Not Likely to Succeed In Any Claim Against School Specialty, Inc.

Finally, although Plaintiff levels all of its accusations against the "Defendants," and vaguely asserts that the defendants "acted in concert," (see, e.g., Compl. para. 6), Plaintiff offers no evidence or argument against School Specialty. School Specialty is Childcraft's parent corporation; that is the extent of its "involvement" in these matters, and Plaintiff offers no evidence to the contrary. An injunction against School Specialty would be wholly improper.

## II.    PLAINTIFF FAILS TO DEMONSTRATE THE LIKELIHOOD OF IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF

A party facing truly irreparable harm logically will act quickly to protect its interests. Inexplicably, however, Plaintiff has waited more than three years since Childcraft first offered the Seat Pocket for sale, and more than five months since filing its lawsuit, to submit its motion for a preliminary injunction. Any harm faced by Plaintiff is not so immediate and irreparable as to require the drastic remedy of injunctive relief. Moreover, the damage alleged by Plaintiff – lost sales of its Seat Sack product to Childcraft's so-called "knock off" Seat Pocket – is fully compensable by money damages. In the absence of proof of irreparable harm, Plaintiff is not entitled to an injunction.

### A.    Plaintiff's Delay in Seeking Injunctive Relief Forecloses Any Claim of Irreparable Harm

One telltale fact – Plaintiff's significant delay in moving for preliminary injunctive relief – is dispositive of its motion. Irreparable harm is absent if the plaintiff, with knowledge of the alleged harmful act, delays either filing suit or moving for preliminary injunctive relief. See

Tough Traveler Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995). Such delay precludes preliminary injunctive relief "because the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." Id. (quoting Citibank, N.A. v. Citytrust, 756 F.2d 273, 277 (2d Cir. 1985) (internal quotation marks omitted)).

Here, Plaintiff's motion for injunctive relief comes more than three years after Childcraft's first offering of the Seat Pocket, and over five months after Plaintiff filed suit.[2] Courts have consistently held that similar – and even shorter – delays justify denying preliminary injunctive relief outright, including in cases involving alleged interference with intellectual property rights. See, e.g., Citibank, 756 F.2d at 276 (10-week delay in seeking injunction bars relief); Magnet Communs. LLC v. Magnet Communs., Inc., No. 00 Civ. 5746, 2001 WL 1097865, at *1 (S.D.N.Y. Sept. 19, 2001) ("[A] delay of twelve weeks . . . tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement."); Tough Traveler, 60 F.3d at 968 (delay of four months after commencing action negates any potential finding of irreparable harm); Worldwide Sport Nutritional Supplements, Inc. v. Five Star Brands, LLC, 80 F. Supp. 2d 25, 34 (N.D.N.Y. 1999) (seven-month delay in seeking injunction negates claims of irreparable harm); Ivy Mar Co. v. C.R. Seasons, Ltd., 907 F. Supp. 547, 563 (E.D.N.Y. 1995) (six-month delay in seeking preliminary injunction in infringement and trade dress case bars relief); The Comic Strip v. Fox Television Stations, Inc., 710 F. Supp. 976, 981 (S.D.N.Y. 1989) (seven-month delay precludes injunctive relief); Brockmeyer v. The Hearst Corp., No. 01

---

[2] The original summons and complaint were filed in the Supreme Court of the State of New York, County of New York, on March 5, 2007, and were signed by Plaintiff's counsel on February 6, 2007. Plaintiff's Cross Motion for a Preliminary Injunction is dated July 24, 2007. Moreover, the affidavit of Ann [sic] McAlear submitted in support of Plaintiff's motion, which was filed on July 24, 2007, indicates that it was executed four months earlier, on March 21, 2007.

Civ. 7746(JGK), 2002 WL 1402320, at *4 (S.D.N.Y. June 27, 2002) (denying motion for

preliminary injunction where movant was aware of allegedly infringing publication fifteen

months before filing complaint and waited six weeks after filing complaint to file motion).

As in the cases cited above, Plaintiff's unexplained, unjustified "leisurely pace" (see

Tough Traveler, 60 F.3d at 968) and obvious "tardiness in seeking protection underscore[s] the

weakness of [its] claim." Cedar Swamp Holdings, Inc. v. Zaman, 476 F. Supp. 2d 303, 304

(S.D.N.Y. 2007). The motion should be denied.

**B.     Delay Aside, Plaintiff Cannot Show Irreparable Harm In Any Event**

The Second Circuit has repeatedly noted that "[p]erhaps the single most important

prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted

the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered."

Borey v. National Union Fire Ins. Co., 934 F.2d 30, 33 (2d Cir. 1995) (citations and internal

quotation marks omitted). Thus, "a mere possibility of irreparable harm" is insufficient to justify

the drastic remedy of a preliminary injunction. Id.

Remarkably, Plaintiff makes only a passing attempt at establishing irreparable harm,

stating in conclusory fashion that "during the pendency of this action" it will "sustain irreparable

damage in the manner set forth in the affidavit of Ann McAlear[.]" (Pl.'s Br. at 14.)  McAlear's

affidavit, in turn, proclaims that Plaintiff has "lost sales in excess of several million dollars," that

sales of the Seat Sack are the company's "total source of income," and that Plaintiff "will be

forced out of business due to the continuation of illegal 'knock off' sales" in the absence of

injunctive relief. (McAlear Aff. paras. 16-18). Plaintiff's bald declarations, offered without a

shred of substantiating evidence, do not even establish the "mere possibility of irreparable

harm," and fall well short of the showing needed to establish "the single most important prerequisite" to a preliminary injunction.

        *1.    Plaintiff's Alleged Harm Is Compensable Through*
             *Money Damages, and Therefore Is Not Irreparable*

      Where money damages are available, there is no irreparable injury, and preliminary injunctive relief must be denied. <u>See</u> <u>Loveridge v. Pendleton Woolen Mills, Inc.</u>, 788 F.2d 914, 918 (2d Cir. 1986). When a party can be fully compensated for financial loss by a money judgment, there is simply no compelling reason why the extraordinary equitable remedy of a preliminary injunction should be granted. <u>See id.</u> By its own admission, Plaintiff seeks money damages in the form of "lost sales in excess of several million dollars." (McAlear Aff. para. 16). Any injury Plaintiff might suffer between now and the time of trial is fully compensable through a money judgment. There simply is no irreparable harm here.

      Plaintiff cannot alter this result merely by proclaiming that it will be bankrupted by the time of trial without injunctive relief. To be sure, a monetary loss alone might amount to irreparable harm in rare instances where the movant provides evidence of damage that cannot be rectified by financial compensation, such as proof that the monetary loss will force the party into bankruptcy. <u>See</u> <u>Borey</u>, 934 F.2d at 34. But Plaintiff must establish its entitlement to an injunction through a "clear showing" of irreparable injury. <u>Beech-Nut, Inc. v. Warner-Lambert Co.</u>, 480 F.2d 801, 803 (2d Cir. 1973). Plaintiff's burden, moreover, may be even greater where, as here – with its demand that Childcraft cease selling the Seat Pocket and shut down its website – it seeks a mandatory injunction that changes rather than preserves the status quo. <u>See</u> <u>Tom Doherty Assoc., Inc. v. Saban Entertainment, Inc.</u>, 60 F.3d 27, 34 (2d Cir. 1995). Whatever the nature of the injunctive relief sought, Plaintiff cannot meet its burden merely on the basis of conclusory assertions. <u>See, e.g.</u>, <u>New York City Envir. Justice Alliance v. Giuliani</u>, 214 F.3d 65,

72 (2d Cir. 2000); <u>Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co.</u>, 604 F.2d 755, 758

(2d Cir. 1979) (criticizing district court's award of injunctive relief based on affidavits replete

with "flat contradictions, discrepancies, and unsupported conclusory statements"), <u>superseded by

rule on other grounds, as discussed in</u> <u>Weissmann v. Freeman</u>, 868 F.2d 1313, 1322 (2d Cir.

1989). Plaintiff's unsubstantiated proclamation of imminent bankruptcy, particularly hollow in

light of its unexplained delay in bringing its motion, does not establish that an award of money

damages would be insufficient compensation.

Because any injury to Plaintiff can be adequately addressed through money damages, its

motion should be denied.

### 2.     *Irreparable Harm May Not Be Presumed*

Although Plaintiff does not advance the argument, irreparable harm resulting from

consumer confusion in a trademark infringement action may sometimes be presumed.[3] <u>See

Tough Traveler</u>, 60 F.3d at 967. Indeed, it has been said that in the context of a Lanham Act

claim, the requirement of irreparable harm carries "no independent weight," because a "showing

of a likelihood of confusion . . . establishes irreparable harm." <u>Genesee Brewing</u>, 124 F.3d at

142. The presumption applies, however, only when a plaintiff has shown a "high probability" of

confusion. <u>Tough Traveler</u>, 60 F.3d at 967. As discussed above, Plaintiff has made no showing

of a likelihood of consumer confusion. The presumption does not apply, moreover, if the

plaintiff "has delayed . . . in moving for preliminary injunctive relief." <u>Id.</u> at 968. Here, Plaintiff

has inexplicably sat on its hands for many months, and perhaps as much as three-and-a-half

years, before seeking injunctive relief. There can be no presumption of irreparable harm.

---

[3] Irreparable harm also may be presumed in a patent infringement action, but only upon a "clear showing of likely success on the merits." <u>Jack Guttman, Inc. v. Kopykake Enter., Inc.</u>, 302 F.3d 1352, 1356 (Fed. Cir. 2002). As discussed above in the text, plaintiff has virtually no likelihood of success on its patent infringement claim.

**III.    IF THE PRELIMINARY INJUNCTION IS GRANTED,
PLAINTIFF MUST BE ORDERED TO POST A BOND**

A district court must fix a bond whenever it grants a preliminary injunction.  See Fed. R.

Civ. P. 65(c); J.G. Stickley, Inc. v. Canal Dover Furn., 79 F.3d 258, 261 (2d Cir. 1996) (noting

district court required moving party to post $100,000 bond as required by Rule 65(c)).  Here, the

sweeping relief requested by Plaintiff – which would force Childcraft to shut down its website

and stop selling or advertising its Seat Pocket – justifies a substantial bond.  Absent such

security, and considering Plaintiff's self-described status as a small-scale operation with limited

financial resources, Childcraft may have no means to recover costs and damages if it is wrongly

enjoined or restrained.

## CONCLUSION

Based on the foregoing, Childcraft Defendants respectfully request that Plaintiff's motion

for a preliminary injunction be denied.  If any such relief is granted, however, the Court should

order Plaintiff to post a bond.

Dated:  August 23, 2007

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By

Richard W. Mark (RM 6884)
David M. Fine (DF 4470)
666 Fifth Avenue
New York, NY  10103

Attorneys for Defendants,
Childcraft Education Corp. and
School Specialty, Inc.

OF COUNSEL:

Nicholas A. Kees
Anthony S. Baish
Mark E. Schmidt
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, WI  53202-3590