Richard W. Mark (RM 6884)
David M. Fine (DF 4479)
ORRICK, HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, NY 10103
Telephone: (212) 506-5000
Facsimile: (212) 506-5151

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
SEAT SACK, INC.,                      :
                                      
      Plaintiff,              :

  -against-                           :

CHILDCRAFT EDUCATION CORP.;           :    CASE NO. 07-CIV-3344 (RJH)(DFE)
US OFFICE PRODUCTS COMPANY;
US OFFICE PRODUCTS NORTH              :
ATLANTIC DISTRICT, INC.; and
SCHOOL SPECIALTY, INC.,               :

      Defendants.             :
------------------------------------- X

## DECLARATION OF VIRGINIA MURPHY

1.    I am the Vice President of Early Childhood Merchandising and Product Development for Childcraft Education Corporation ("Childcraft"), a position I have held since December, 1995.

2.    In that position, I oversee product selection and product development at Childcraft, including the "Seat Sack" and "Seat Pocket" that are the subject of this lawsuit.

3.    On January 28, 2000, plaintiff Seat Sack, Inc. ("plaintiff") executed an agreement with Childcraft entitled "Childcraft Education Corp. Exclusives – Growing Years Catalog" (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit A.

4.    The Agreement gives Childcraft the exclusive right to sell plaintiff's Seat Sack

product bearing the Childcraft label.

5. Over the course of several years under this arrangement, Childcraft purchased thousands of Seat Sacks from plaintiff.

6. The purchased Seat Sacks became part of Childcraft's inventory and were later sold, bearing the Childcraft label, through Childcraft's website and catalog.

7. Childcraft paid plaintiff all amounts due whenever it purchased Seat Sacks.

8. Other than the purchase price paid by Childcraft, plaintiff was not entitled to receive any additional money – such as a royalty – from Childcraft's resale of the Seat Sack.

9. The Agreement did not require Childcraft to purchase or sell any minimum number of Seat Sacks, and did not restrict Childcraft's right to offer competing products.

10. Other than the Agreement and periodic purchases of Seat Sacks, Childcraft did not enter into any other agreements with plaintiff.

11. Childcraft and plaintiff operated under this arrangement for several years. In approximately 2003, however, Childcraft discovered that plaintiff was offering to sell the Seat Sack to Childcraft's competitors at a price lower than the price at which it sold to Childcraft.

12. Childcraft also learned that plaintiff was offering the Seat Sack for sale directly to teachers, who are a primary market for Childcraft products, at a price lower than offered in the Childcraft catalog.

13. Because it did not want to further subsidize a competitor, Childcraft elected to end its relationship with plaintiff.

14. In July 2003, Childcraft independently began developing its own Seat Pocket product.

15. The Seat Pocket is different from plaintiff's Seat Sack in terms of its pocket

configuration (it contains two additional storage pockets), appearance, and color. True and correct copies of pages from the 2004 Childcraft catalog that depict plaintiff's Seat Sack as well as Childcraft's Seat Pocket are attached hereto as Exhibit B.

16. Childcraft first offered both the Seat Sack and the Seat Pocket for sale in its catalog in January 2004. Childcraft continued to offer both products for sale in its catalog through 2005.

17. To my knowledge, Seat Sack did not complain about the development and sale of the Seat Pocket prior to the filing of this lawsuit.

18. Childcraft's last purchase of Childcraft-branded Seat Sacks occurred on or about September, 2005.

19. Until recently, if a visitor to Childcraft's website entered the search term "Seat Sack," the website would produce information about both the Seat Sack (some of which remained in Childcraft's inventory) and the Seat Pocket. I first learned of this situation during the course of this lawsuit.

20. Upon investigating the matter with Childcraft's website technology personnel, I learned that the results of searches on Childcraft's website are determined by automated protocols set forth in the website's software, and that Childcraft did not change or manipulate the search protocols of its website to influence the results of searches containing the terms "seat," "Seat Sack," or "Seat Pocket."

21. Although Childcraft is entitled to sell the Seat Pocket and its remaining inventory of Seat Sack's without restriction, out of an abundance of caution in light of plaintiff's Complaint, I instructed Childcraft's website technology personnel to reconfigure Childcraft's website so that a search for "Seat Sack" does not yield results that include information about the

Seat Pocket.

22. I have reviewed the Affidavit of Ann McAlear, submitted in connection with this lawsuit. In particular, I have made note of the reference to a computer search apparently conducted by a New York School District teacher on what appears to be a "NYC Department of Education" website. Childcraft does not operate, administer, or control the content or search protocols of the "NYC Department of Education" website or the websites of any other school district or education department.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 23 day of August, 2007.

_____
Virginia Murphy

mw1364650_3