UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SEAT SACK, INC.,

                    Plaintiff,

   -against-                           Case No. 07-CV-3344 (RJH)(DFE)

CHILDCRAFT EDUCATION CORP,;
US OFFICE PRODUCTS COMPANY;
US OFFICE PRODUCTS NORTH
ATLANTIC DISTRICT, INC.; and
SCHOOL SPECIALTY, INC.,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## REPLY MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR A PRELIMINARY INJUNCTION

Respectfully submitted,

EDWARD J. CARROLL, ESQ.
Attorney for Plaintiff, SEAT SACK, INC.
2733 Route 209
Kingston, New York 12401
Telephone: 845-338-5977
Facsimile: 845-338-5975

# TABLE OF CONTENTS

Page

ARGUMENT.................................................... 1

BRIEF SUMMARY OF THE FACTUAL
ALLEGATIONS OF PLAINTIFF'S COMPLAINT............. 3

PLAINTIFF'S COMPLAINT WAS PREPARED FOR
LITIGATION IN THE SUPREME COURT OF THE
STATE OF NEW YORK.......................................... 5

   I.  Seat Sack's Fraud Claims Should Not Be Dismissed..... 5

  II.  Discovery.................................................... 6

 III.  Plaintiff's Third Cause of Action for Conversion
      Should Not Be Dismissed.................................. 8

 IV.  Seat Sack's Claim for Misappropriation of Trade
      Secrets and/or "Deceptive Trade Practices" Should
      Not Be Dismissed.......................................... 9

      a.  Defense counsel's claim that plaintiff's complaint
         does not specifically identify Section 349 of the
         New York General Business Law is without
         merit...................................................... 9

  V.  Attorney's Fees............................................. 10

 VI.  Unjust Enrichment.......................................... 11

VII.  Plaintiff's Motion for a Preliminary Injunction........... 12

      a.  The likelihood of irreparable injury................... 12

      b.  Likelihood of success on the merits................... 13

      c.  Sufficiently serious questions going to the merits
         and a balance of hardships tip decidedly in
         plaintiff's favor........................................ 15

i

**TABLE OF CONTENTS**
(continued)

**Page**

A BOND………………………………………………………...    16

CONCLUSION……………………………………………    17

# TABLE OF AUTHORITIES

**Page**

## CASES

*Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,*
    853 F.2d 1557, 1565 (Fed. Cir. 1988)……………………………    15

*Commerce and Indus. Insurance Co. v. Globe Office*
    *Supply Co.*, 266 AD2d 165 (First Dept., 1999)………………..    2

*Niagara Mohawk Power Corp. v. Freed*, 265 AD2d 938
    (Fourth Dept., 1999)………………………………………………    2

*NY Penal Law Section 165.74*……………………………………    8

*Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964,
    967 (2d Cir. 1995)…………………………………………………    12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SEAT SACK, INC.,

                    Plaintiff,

    -against-                                    Case No. 07-CV-3344 (RJH)(DFE)

CHILDCRAFT EDUCATION CORP,;
US OFFICE PRODUCTS COMPANY;
US OFFICE PRODUCTS NORTH
ATLANTIC DISTRICT, INC.; and
SCHOOL SPECIALTY, INC.,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## REPLY MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR A PRELIMINARY INJUNCTION

For the Court's convenience, this reply memorandum shall address, where possible,

defendants' arguments in the same order as defendants have raised them in their reply

memorandum, dated August 8, 2007.

## ARGUMENT

Defendants, lacking any meritorious factual defense, are instead moving, as a matter

of law, to dismiss plaintiff's lawsuit at its inception, before the plaintiff has had any

opportunity to present its merits.

Defendants' counsel, by virtue of their motion, are attempting to prematurely acquire

all of plaintiff's evidentiary proof which should be more properly presented during discovery

or at trial.  To accomplish these goals, rather than denying plaintiff's factual allegations,

- 1 -

defense counsel instead argue that plaintiff's complaint fails to plead fraud with particularity; that the fraud claims are indistinguishable from the plaintiff's breach of contract claims; and that plaintiff's actions for conversion, misappropriation of trade secrets and/or deceptive trade practices, unjust enrichment, and for the recovery of attorney's fees must be dismissed.

Defense counsel further attempt to convince this Court that the defendants have done nothing improper; that they did not act as plaintiff's fiduciary; that no consumers were harmed; and that a cause of action for breach of contract precludes additional causes of action, even if such claims are based upon independent and extrinsic acts.

Contrary to defendants' arguments, the only issue to be decided in the instant motion is whether plaintiff's complaint meets the minimum factual standards required by law.

Defense counsel argue that plaintiff's complaint, in order to meet those minimum standards, must contain voluminous and detailed acts of the defendants establishing fraud, and, at best, such conduct, if committed, only constitutes a breach of contract.

What defense counsel overlook, however, is that plaintiff's complaint presently alleges facts which establish a conspiracy to defraud and criminal conduct. Such acts establish fraud, as a matter of law. Plaintiff's complaint additionally seeks to recover for more than just a breach of contract. As a result of the foregoing, plaintiff's complaint includes several additional, independent and unrelated causes of action which establish fraud; conversion; deceptive trade; unfair business practices; misappropriation of trade secrets; unfair competition; award of attorney's fees; unlawful use of plaintiff's patented product, trademark and service mark; violations of 15 U.S.C. 1125(a); violations of General Business Law and unjust enrichment.

- 2 -

Much of this tortuous conduct was committed in violation of the defendants' fiduciary duty to plaintiff.

This conduct occurred outside of any contractual relationship between the plaintiff and defendants and independently establishes causes of action for fraud; conversion; deceptive trade; unfair business practices; misappropriation of trade secrets; unfair competition; award of attorney's fees; unlawful use of plaintiff's patented product, trademark and service mark; violations of 15 U.S.C. 1125(a); violations of General Business Law and unjust enrichment.

### BRIEF SUMMARY OF THE FACTUAL
### ALLEGATIONS OF PLAINTIFF'S COMPLAINT

Plaintiff's complaint alleges that the defendants first entered into a contract with plaintiff and agreed to act, on behalf of the plaintiff, in a fiduciary capacity, as the distributing agent of plaintiff's patented product, sold under the trademark of "Seat Sack". However, instead of diligently acting as plaintiff's fiduciary and pursuing sales on behalf of the plaintiff, the defendants instead conspired to commit criminal acts against the plaintiff which included counterfeiting plaintiff's products, conducting unfair business practices, engaging in unfair competition, and misappropriating trade secrets. These independent and extrinsic acts were committed outside of any contractual relationship, and, on many occasions, rose to the level of criminal conduct.

For example, after acquiring rights to sell plaintiff's product and obtaining plaintiff's confidential trade secrets as to the method, manner, location of markets and customers' identities, which were provided to the defendants to assist them in their contractual obligations as an agent, the defendants, instead, misappropriated this information and created their own inferior "knock-off" products, which they sold in direct competition with plaintiff,

- 3 -

under same or similar names to plaintiff's trademark, i.e. "Seat Sack cc edu" and "Seat Pocket(s)".

The defendants then created a website using plaintiff's trade name, "Seat Sack" as an index for customers seeking plaintiffs' product. Once a customer found that index, they were transferred, without their knowledge, to a web page which sold defendants' counterfeits, "Seat Sack cc edu" and "Seat Pocket" instead of plaintiff's "Seat Sack".

In markets requiring bid specifications that mandated the purchase of plaintiff's product, the defendants further mislead the general public, and specifically the plaintiff's customers and plaintiff, by utilizing the plaintiff's trade name, "Seat Sack", when selling defendants' counterfeit products under the same name, i.e. "Seat Sack cc edu". One of these markets included New York City School Districts (See affidavit of Anne McAlear at paragraph 15, Exhibit "E").

These non-contractual acts confused and mislead the general public, including those internet customers who were attempting to locate plaintiff's product by use of its trade name. Even in the absence of a contract, the defendants' conduct, standing alone, constituted civil and criminal wrongdoings. Many of the defendants' actions also rose to the level of felonies, including *Trademark Counterfeiting in the First Degree*, and *Trademark Counterfeiting in the Second Degree,* Class C and E felonies contrary to sections 165.72 and 165.73 of the *Penal Law of the State of New York* and *Trademark Counterfeiting in the Third Degree*, a misdemeanor contrary to 165.71 of the *Penal Law of the State of New York* (See allegations of Plaintiff's complaint at page 8, paragraph 18 for specific acts alleged).

Defense counsels' claims that these independent acts, which are clearly set forth in plaintiff's complaint, do not state fraud with particularity are ridiculous. These acts are

- 4 -

especially horrendous since they are alleged to have been committed while the defendants were acting contrary to their responsibilities as plaintiff's fiduciary.

Defense counsels' final argument that these acts of self-dealing must be considered only as a cause of action for breach of contract by this Court is tantamount to a "contractually employed" bank teller claiming that he or she cannot be additionally and independently prosecuted by that bank for a larceny.

The present form of plaintiff's complaint contains allegations which sufficiently establish a cause of action for fraud, which exists independently and apart from a cause of action for breach of contract.

As such, plaintiff's complaint has met the minimum standards required by law.

### PLAINTIFF'S COMPLAINT WAS PREPARED FOR LITIGATION IN THE SUPREME COURT OF THE STATE OF NEW YORK

#### *I. Seat Sack's Fraud Claims Should Not Be Dismissed*

Plaintiff's action was originally commenced in the Supreme Court of the State of New York, County of New York. After service of plaintiff's complaint, defense counsel moved to transfer plaintiff's action to the United States District Court for the Southern District of New York.

Defense counsel now complain that the form of plaintiff's complaint in the "state action" does not meet minimum "federal" legal standards. Specifically, the defendants argue that plaintiff's complaint is defective in that certain paragraphs are made "upon information and belief" and that the fraud claims are indistinguishable from Seat Sack's breach of contract claims.

Nothing could be further from the truth.

- 5 -

It is patently unfair for the defendants to complain that plaintiff's complaint does not meet the requirements of Fed. Rule 9(b) and Rule 12(b)(6). Even assuming that complaint was valid, it was the defendants, themselves, who created that alleged deficiency by causing plaintiff's pleading, prepared in accordance with state procedures, to be transferred to a federal court. While the plaintiff submits that the present form of its complaint is sufficient, if any deficiency is found by this Court, the plaintiff requests leave to amend before the drastic remedy of dismissal is imposed.

It is respectfully submitted that plaintiff's complaint does allege fraud, with particularity, in accordance with Fed. R. Civ. P. 9(b). A scheme to defraud, involving criminal conduct by the defendants, is alleged independently of the contract. There is no requirement that plaintiff must meet a minimum number of factual allegations purportedly committed by the defendant to state such a cause of action.

It is also respectfully submitted that, if even one factual allegation purportedly committed by the defendants constitute fraud, the complaint is legally sufficient. In the instant action, plaintiff has alleged that the defendants have carried out a scheme to defraud, involving numerous acts, many of which constitute crimes.

Under these circumstances, plaintiff's complaint has met the minimum standards required in that a cause of action for fraud has been sufficiently established.

### II. Discovery

Defense counsel claim that plaintiff should not be entitled to any discovery required to obtain particulars of defendants' claims, even though such information is, at present, totally within their knowledge and possession.

- 6 -

Plaintiff does not concede that the present form of its complaint lacks such particulars, or that it is otherwise deficient. However, the defendants now possess the affidavit of Ann McAlear, president of "Seat Sack", which was submitted in opposition to defendants' instant motion. This affidavit provides further particulars of the events previously set forth in plaintiff's complaint. Her affidavit is made on personal knowledge and provides further details of the factual allegations of plaintiff's complaint and it is also submitted in support of plaintiff's cross motion for a preliminary injunction.

While discovery can always be helpful in providing further particulars for the benefit of defense counsel, the complaint, in its present form, contains sufficient factual allegations of the defendants' fraudulent acts. These allegations are not simply conclusions. Any additional details, which plaintiff alleges constitute fraud, are presently within the defendants' sole knowledge. Therefore, mutual discovery proceedings are the proper method to seek that information *Niagara Mohawk Power Corp. v. Freed,* 265 AD2d 938 (Fourth Dept., 1999); *Commerce and Indus. Insurance Co. v. Globe Office Supply Co.,* 266 AD2d 165 (First Dept., 1999).

It must be remembered that defendants' motion seeks to dismiss plaintiff's complaint upon the grounds that it fails to state a cause of action. This is not a motion for summary judgment where a party must lay bare all of its evidentiary material in order to preserve its rights to proceed to trial. Defense counsel has already been provided with the statements and acts of the defendants complained of. No demands for discovery have as yet been made which would require further disclosure as to the date, time and place where those statements were made, and by whom, nor were further details of those acts demanded. The defendants may proceed through discovery to obtain further details by depositional testimony or

- 7 -

otherwise.  At this juncture, plaintiff's complaint amply provides notice of the actions of the defendants upon which the plaintiff has based its lawsuit.

Therefore, the content of plaintiff's complaint, in its present form, is sufficient.

### III. Plaintiff's Third Cause of Action for Conversion Should Not Be Dismissed

Defense counsel claim that plaintiff's cause of action for conversion should be dismissed under the belief that plaintiff seeks nothing more than general money damages.

Defendants' belief is not supported by a reading of plaintiff's complaint.

Plaintiff's complaint, including, but not limited to: page 13, paragraph 33, and   page 25, paragraph D(2), seeks relief which includes:

a. Specific accounting and inventory of the sales, by defendant, of plaintiff's product, and the seizure and recovery of all unsold plaintiff's products and if sold, the specific proceeds which were illegally converted by the defendants.

b. Specific accounting and inventory of the sales, by defendant, of its counterfeit products, and the seizure and recovery of all such unsold counterfeit products, pursuant to *NY Penal Law Section 165.74*, or, if sold, the specific proceeds which were illegally converted by the defendants.

The complaint also seeks a temporary restraining order and a preliminary injunction during the pendency of this action and permanently thereafter restraining, enjoining, and prohibiting the defendants from counterfeiting plaintiff's product; seizing all of that specific counterfeit merchandise; prohibiting defendants from future manufacturing of same; directing defendants to provide an accounting of all sales, and an inspection of all the defendants' books and records; directing defendants to return the specific assets received from

- 8 -

plaintiff and the specific losses sustained by plaintiff as a result of defendants' conduct (See plaintiff's complaint at pages 25, 26, and 27).

Under the circumstances, since plaintiff seeks the recovery of specific money and/or property, plaintiff's third cause of action for conversion should not be dismissed.

### IV. Seat Sack's Claim for Misappropriation of Trade Secrets and/or "Deceptive Trade Practices" Should Not Be Dismissed

Contrary to defense assertions, plaintiff's complaint alleges that the defendants misappropriated and/or misused private property or information, including, but not limited to "trade secrets". Plaintiff's cause of action is adequately stated in paragraphs 1 through 35 in plaintiff's complaint and, specifically, in plaintiff's fourth cause of action entitled "Deceptive Trade, Unfair Business Practice, Misappropriation of Trade Secret and Unfair Competition".

In addition, the plaintiff's complaint alleges that, after acquiring rights to sell plaintiff's product and obtaining plaintiff's confidential trade secrets as to the method, manner, location of markets and customers' identities, which was provided to the defendants to assist them in their contractual obligations, the defendant's, instead misappropriated that information and created "knock-off" products in direct competition to plaintiff which defendants sold as "Seat Pocket(s)" and "Seat Sack cc edu".

Due to the foregoing, plaintiff's complaint seeks injunctive relief enjoining further use of those misappropriated trade secrets and the return of other property which was misappropriated and/or misused, together with an injunction enjoining the defendants' from committing such deceptive trade practices in the future.

### a. Defense counsels' claim that plaintiff's complaint does not specifically identify section 349 of the New York General Business Law is without merit.

- 9 -

There is no requirement that section 349 of the New York General Business Law be cited within the factual paragraphs of plaintiff's cause of action for <u>"deceptive trade"</u>, <u>"unfair business practices"</u>, <u>"misappropriation of trade secrets" and "unfair competition"</u>.

The defendants also claim that this cause of action is defective for an alleged failure to state that defendants' counterfeits are inferior and that they harm consumers.

Plaintiff's complaint does allege that defendants' counterfeit products are inferior to "Seat Sack" and that defendants are selling these inferior products to school districts throughout the country and, ultimately, to the children that attend those districts. These counterfeits, which appear identical to plaintiff's "Seat Sack", but which are of a lesser quality of construction, are being manufactured by the defendants in the countries of China and Taiwan (See plaintiff's complaint at page 9, paragraph 18 A, and the affidavit of Ann McAlear at paragraph 10, exhibit "F"). Plaintiff's complaint clearly alleges damages are being sustained by plaintiff, other manufacturers, and all of their consumers, including the general public (See paragraph 10 of plaintiff's complaint).

Certainly, allegations of plaintiff's complaint, made expressly and/or by inference, that manufacturers, including plaintiff, and consumers, including public school district boards, their teachers and officers, students others, are being harmed, is sufficient to sustain an action "threatening the general public" pursuant to New York General Business Law section 349.

Therefore, Seat Sack's cause of action for <u>"misappropriation of trade secrets" and/or</u> <u>"deceptive trade practices"</u> should not be dismissed.

### *V. Attorney's Fees*

Section 349 of the New York General Business Law, by statute, expressly provides for an award of attorney's fees. Likewise, New York State Courts have consistently held, by case

law, that where an agent breaches its fiduciary duty to its principal, and the principal sustains damages, the principal is entitled to an award of reasonable attorney's fees in any litigation seeking to recover for those damages.

Defense counsel's claim that the defendants were not acting as "Seat Sack"'s distributing agent, and therefore were not acting in a fiduciary capacity, is at best, an attempt, without evidence, to create a material issue of fact.

However, since the allegations of plaintiff's complaint must be deemed true for purposes of this motion, it is undisputed that a fiduciary relationship existed between plaintiff, as principal, and the defendants, as agents, which the defendants breached, causing the plaintiff to sustain damages for which the plaintiff seeks an award of reasonable attorney's fees.

Any argument to the contrary is totally inapplicable to this motion.

For the reasons previously set forth in plaintiff's memorandum of law, dated July 24, 2007, at *pages 12* and *13,* plaintiff's complaint, seeking an award of reasonable attorney's fees should be upheld.

### VI. Unjust Enrichment

Defense counsel claim that the existence of a contract between "Childcraft" and "Seat Sack" precludes "Seat Sack" from pursuing any "unjust enrichment" claim.

Again, for reasons previously set forth herein, defendants' independent, additional, unlawful extrinsic tortuous conduct has lined defendants' pockets with profits and at the expense of plaintiff.

These activities were carried out and/or committed in breach of a fiduciary duty owed plaintiff.

- 11 -

Under these circumstances, the plaintiff should be compensated for damages sustained which have unjustly enriched the defendants.

Plaintiff's complaint for unjust enrichment sufficiently states a cause of action.

### VII. Plaintiff's Motion for a Preliminary Injunction

It is respectfully submitted that a preliminary injunction should be granted in that the plaintiff has shown (1) the likelihood of irreparable injury, and (2) either: (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in plaintiff's favor. See *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 967 (2d Cir. 1995).

### (a) The likelihood of irreparable injury

There is no question that the defendants are multi-million dollar corporations which operate for profit throughout the world.  The effect of an issuance of a preliminary injunction, during the pendency of this action, enjoining defendants from continuing to sell their counterfeit products, which they developed and marketed while they were in breach of their duties, as plaintiff's distributing agent, would be minimal.

In stark contrast to the financial stability of the corporate defendants, the plaintiff is a small, family-owned corporation which is struggling to meet its daily obligations as a result of the devastating effect of the defendants' continuing acts of "self-dealing".

If a preliminary injunction is not granted, the plaintiff will not be able to continue the operation of its business until a trial can be held and the Court has the opportunity to hear the merits of plaintiff's action.

Under these circumstances, a preliminary injunction should be granted.

- 12 -

### (b) Likelihood of success on the merits

Defendants' counterfeit products exhibit the same aspects of plaintiff's patented design and name. Defendants copied the novel idea of hanging a sack from the back of a student's chair for the purpose of organizing and storing a student's supplies.

The defendants then copied and sold their counterfeit under the name "Seat Pocket" and "Seat Sack cc edu", which is substantially the same name and design as that of plaintiff's trademarked and patented "Seat Sack".

The similarity creating confusion for consumers is apparent upon a cursory comparison. (Compare the statistics and pictures both shown as Exhibits "B" and "D" which are attached to the affidavit of Ann McAlear). A plain reading of Exhibit "B", when compared to Exhibit "D", reveals that the similarities of the counterfeit will deceive a purchaser, inducing him or her to purchase one supposing it to be the other.

One point of novelty which allowed plaintiff to obtain a patent is the fact that plaintiff's organizer hangs from the back of each student's chair, and, for the first time, allows school districts to use valuable organizational space.

Clearly, the defendants knew of plaintiff's established rights to manufacture and sell "Seat Sack" prior to developing and introducing their counterfeits. Plaintiff's complaint factually alleges that plaintiff obtained a patent for and has used "Seat Sack"'s design, trade name and trademark since May 30, 1995 (See affidavit of Ann McAlear, Exhibit "B").

Defendants do not dispute that they have acted as plaintiff's distributing agent since January 8, 2000, and therefore knew of plaintiff's novelty in design and trade name prior to producing their counterfeit. Since January 8, 2000, plaintiff labeled its product with

- 13 -

instructions that further orders for the product should be placed with the defendants. Clearly, the plaintiff relied upon the responsibility of defendants as a fiduciary.

However, defendants admit that, in July, 2003, after several years of acting as plaintiff's distributing agent, defendants elected, without plaintiff's knowledge and consent, to develop and market their own counterfeit "Seat Pocket" in competition with plaintiff (See declaration of Virginia Murphy).

Obviously, defendants were aware of "Seat Sack"'s established rights in the marketplace, before they began to take advantage of its trade name and product's "secondary meaning".

Defendants do not dispute that they knew that plaintiff's product and trade name were protected under both Federal and State Law.

Instead, defense counsel complain that numerous affidavits were not submitted in support of plaintiff's application for a preliminary injunction. They further conclude that plaintiff has failed to show or demonstrate a likelihood of consumer confusion.

However, a cursory comparison of pictures of both plaintiff's product and the counterfeit (Exhibits "B" and "C", both attached to the affidavit of plaintiff's president, Ann McAlear), reveals that confusion between plaintiff's product and the counterfeit is apparent on the face of these documents, alone.

The defendants knew of the good will and name recognition of plaintiff's "Seat Sack" and the similarity of the counterfeit to plaintiff's product. The defendants, therefore, designed a website where they knew that every consumer seeking plaintiff's product would be confronted with such a comparison. The website contained a "quick search" index with plaintiff's trade name, "Seat Sack", insuring that every person initially seeking plaintiff's

- 14 -

product would be transferred to defendants' website where their counterfeits were being sold under the same or similar name, "Seat Sack cc edu" and "Seat Pockets".

With that comparison, and considering defendants' website, any further discussion on whether plaintiff has failed to show or demonstrate a likelihood of consumer confusion, would be an insult to the intelligence of this Court.

### (c) Sufficiently serious questions going to the merits and a balance of hardships tip decidedly in plaintiff's favor

Plaintiff does not simply seek compensation through monetary damages and will sustain irreparable harm if a preliminary injunction is not granted. In fact, plaintiff seeks various types of temporary and permanent injunctive relief.

Without such relief, plaintiff's business will be forced to cease operation before the merits of this case can be reached at trial.

It is therefore not unreasonable for plaintiff to seek a preliminary injunction in that defendants do not deny the development of their counterfeit. Their fraudulent conduct is tantamount to the commission of crimes, including, but not limited to *Trademark Counterfeiting in the First Degree*, and *Trademark Counterfeiting in the Second Degree*, Class C and E felonies contrary to sections 165.72 and 165.73 of the *Penal Law of the State of New York* and *Trademark Counterfeiting in the Third Degree*, a misdemeanor contrary to 165.71 of the *Penal Law of the State of New York.*

Such acts, committed by the defendants, in violation of their fiduciary duties owed plaintiff, meet the criteria in *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1565 (Fed. Cir. 1988); *Tough Traveler, Ltd. v. Outbound Prods.*

- 15 -

## A BOND

The plaintiff seeks a preliminary injunction, but does not oppose the fixing of a reasonable bond.

However, the defendants have provided this Court with no evidence that they will sustain any damages if a preliminary injunction is granted.

Therefore, plaintiff respectfully requests that the amount of the bond, if any, be minimal.

## CONCLUSION

Wherefore, due to the foregoing, plaintiff respectfully requests that the defendants'

motion to dismiss be, in all respects, denied and that the relief sought in plaintiff's cross

motion be, in all respects, granted together with such other and further relief as to this Court

may deem just and proper under the circumstances.


Dated: August 30, 2007                      Respectfully submitted,

                                            _____
                                            EDWARD J. CARROLL, ESQ.
                                            Attorney for Plaintiff, SEAT SACK, INC.
                                            2733 Route 209
                                            Kingston, New York  12401
                                            (845) 338-5977

TO: ORRICK, HERRINGTON 7 STUCLIFF, LLP
    Att: RICHARD W. MARK, ESQ. and DAVID M. FINE, ESQ.
    Attorneys for Defendants, CHILDCRAFT EDUCATION CORP.
    and SCHOOL SPECIALTY, INC.
    666 Fifth Avenue
    New York, New York  10103

    GODFREY & KAHN, S.C. (OF COUNSEL)
    Att: RICHARD S. BAISH, ESQ., MARK E. SCHMIDT, ESQ.
    and NICHOLAS A. KEES, ESQ.
    Attorneys for Defendants, CHILDCRAFT EDUCATION CORP.
    and SCHOOL SPECIALTY, INC.
    780 North Water Street
    Milwaukee, Wisconsin  53202

    YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
    Att: SEAN M. BEACH, ESQ.
    Attorneys for USOP LIQUIDATING LLC (f/k/a US OFFICE
    PRODUCTS COMPANY and US OFFICE PRODUCTS NORTH
    ATLANTIC DISTRICT, INC.)
    P.O. Box 391
    Wilmington, Delaware  19899

- 17 -